# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. ENRIQUE ARAGON-HERNANDEZ, Defendant. | No. CR 06-3061-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S FIRST MOTION IN LIMINE** |

_____

This matter comes before the court pursuant to the defendant's January 17, 2007, First Motion In Limine (docket no. 29). The motion challenges the admissibility of recordings of four telephone conversations on the ground that the quality of the recordings is so poor as to render them inaccurate and unreliable and, hence, inadmissible. The court set a deadline of January 29, 2007, for the government to respond to the motion and to submit for the court's review the recordings in question. The government did, indeed, respond as required on January 29, 2007 (docket no. 33). In its response, the government concedes that the first copy to CDs of the original recordings, which were made on a micro-cassette recorder, were virtually inaudible. On the other hand, the government contends that subsequent copies, provided to the court and counsel, are clearly sufficiently audible to be admissible, and record discussions of past and future drug trafficking. Therefore, the government asserts that the defendant's First Motion In Limine should be denied.

"The admission of tape recordings is 'within the sound discretion of the trial court and will not be reversed unless there has been an abuse of that discretion.'" *United States*

*v. Webster*, 84 F.3d 1056, 1064 (8th Cir. 1996) (quoting *United States v. Martinez,* 951 F.2d 887, 888 (8th Cir. 1991), *cert. denied*, 503 U.S. 994 (1992), with quotations and alteration omitted). The court does not understand the defendant's challenge to the admissibility of the recordings in this case to be a foundational challenge governed by the seven factors articulated in *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974), *cert. denied,* 421 U.S. 916 (1975).[1] Rather, the defendant's challenge here is a direct challenge to the quality and audibility of the recordings and, hence, their trustworthiness. As the Eighth Circuit Court of Appeals explained just over a decade ago,

> Even when the Government satisfactorily clears the *McMillan* hurdle, the defendant may still prevent admission of the tape by proving that it is inaccurate because of inaudibility or some other infirmity. *United States v. Font-Ramirez,* 944 F.2d 42, 47 (1st Cir. 1991), *cert. denied,* 502 U.S. 1065, 112 S. Ct. 954, 117 L. Ed. 2d 122 (1992). A partially inaudible recording will be inadmissible where the defendant establishes that the unintelligible portions are "so substantial, in view of the purpose for which the tape[ ] [is] offered, as to render the recording as a whole untrustworthy⋯" *United States v. Huff,* 959 F.2d 731, 737 (8th Cir.) (quotation omitted), *cert. denied,* 506 U.S. 855, 113 S. Ct. 162, 121 L. Ed. 2d 110 (1992).

*Webster*, 84 F.3d at 1064; *accord United States v. Calderin-Rodrigquez*, 244 F.3d 977, 987 (8th Cir. 2001) (also considering whether the inaudible portions of a recording

---

[1] In *McMillan*, the court explained that, to meet its foundational burden for the admission of recordings, the prosecution must demonstrate the following: "(1) the recording device was capable of recording the events offered in evidence; (2) the operator was competent to operate the device; (3) the recording is authentic and correct; (4) changes, additions, or deletions have not been made in the recording; (5) the recording has been preserved in a manner that is shown to the court; (6) the speakers on the tape are identified; and (7) the conversation elicited was made voluntarily and in good faith, without any kind of inducement." *McMillan*, 508 F.2d at 104.

2

rendered the recording as a whole untrustworthy, citing *Huff*, 959 F.2d at 737-38). "[I]t is good practice for the district court to make a pretrial evaluation of a recording's admissibility." *Id.* at 1064 n.4 (also noting that, where pretrial assessment is not possible, there is no reason why the court must interrupt proceedings to listen to the recordings *in camera*, and the court may, instead, listen as the recordings are played to the jury).

More specifically, in *Webster*, much as in this case, the defendant argued that certain audio recordings were "hopelessly unintelligible," so that they should not have been admitted. *Webster*, 84 F.3d at 1064. The appellate court agreed that, on one recording, "a constant electronic hum severely hamper[ed] a listener's ability to discern the recorded conversation," but nevertheless concluded that the recording had been properly admitted, because it had never been played for the jury, and was, instead, admitted only to corroborate by its existence the testimony of certain witnesses, so that the jury was not adversely affected by the hum. *Id.* at 1065. As to a video recording, the appellate court concluded that, although the audio portion of the tape was "less than clear," this and other infirmities were not so pervasive as to render the tape, as a whole, untrustworthy. *Id.* In other cases, the Eighth Circuit Court of Appeals has held that, even where some portions of a recording were inaudible, such that the jury probably would not be able to understand everything on the recording, admission of the recording was not reversible error, where the recording was not so inaudible that it was untrustworthy as a whole, *see United States v. Tangeman*, 30 F.3d 950, 952 (8th Cir. 1994), where the defendant was provided with the recordings sufficiently in advance of trial to allow him to prepare his own transcript, *see United States v. Britton*, 68 F.3d 262, 264 (8th Cir. 1995), *cert. denied*, 517 U.S. 1105 (1996), and where the defendant was allowed the opportunity to argue to the jury his version of what was contained on the inaudible portions. *See United States v. Nicholson*, 815 F.2d 61, 63 (8th Cir. 1987). On the other

3

hand, the court held that the trial court had properly excluded a recording that included such a substantial portion that was so garbled or inaudible that the recording was rendered "untrustworthy," "confusing," and of "no probative value." *United States v. Jackson*, 67 F.3d 1359, 1367 (8th Cir. 1995), *cert. denied*, 517 U.S. 1192 (1996).

In this case, the court received from the government what is purportedly the better copy of the recordings in question here on an audio cassette tape. The undersigned, accompanied by one of his law clerks, played and carefully listened to the recordings on both a portable stereo/cd/tape player and the high quality audio evidence system in the third floor courtroom, which would be used for any presentation of such evidence to the jury. *See Webster*, 84 F.3d at 1064 n.4 ("[I]t is good practice for the district court to make a pretrial evaluation of a recording's admissibility."). The court finds that the tape provided to the court contains recordings of one unanswered telephone call purportedly from a confidential informant to the defendant and three other telephone calls purportedly between the confidential informant and the defendant. The court found that the general quality of the recordings is very poor, probably owing to the cellular telephones and the micro-cassette recording device used; that little more than isolated phrases, words, or brief exchanges could be clearly understood in any of the recorded conversations; that the recordings were marred by constant electronic or other noise, possibly from the recording device, that was so loud as frequently to overwhelm the conversation; that the volume of the speakers' voices varies dramatically, rendering some comments so soft as to be indiscernible, and others so loud as to be distorted; that one of the speakers had such difficulty hearing the statements of the other that he frequently asked the other to repeat himself; and that, as a result, the tapes in their entirety provide few intelligible comments or exchanges so isolated from each other as to make the conversations incoherent and confusing. Indeed, about the only aspect of the recordings that is relatively clear is which

4

person is speaking, although there are even times when both persons engaged in the conversation speak at the same time, making their individual statements unintelligible.

The recording here is similar to the first recording discussed in *Webster*, because a constant hum, often overwhelming the recorded conversations, severely hampers any listener's ability to discern the recorded conversation. *Cf. Webster*, 84 F.3d at 1064. Unlike the situation in *Webster*, however, the government does intend to offer the *contents* of the recordings as substantive evidence against the defendant, not just the *existence* of the recording to corroborate other evidence. *Cf. id.* (the court must consider the purpose for which the recording is offered and determine whether, in view of that purpose, the inaudible portions render the recording, as a whole, untrustworthy). Also, unlike the situation in *Webster*, the audio portions of the recordings at issue here are not simply "less than clear," but almost entirely unintelligible, so that the defect in the recordings is so pervasive as to render the recordings, as a whole, untrustworthy. *Compare id.* at 1064-65 (finding lack of clarity was not so pervasive as to render the recordings, as a whole, untrustworthy); *Tangeman*, 30 F.3d at 952 (even if the jury probably would not have been able to understand everything, the recording was properly admitted where the recording as a whole was not so inaudible as to render it untrustworthy). Thus, the recordings here are more like the ones ruled inadmissible in *Jackson*, 67 F.3d at 1367, because they are so garbled or inaudible as to render them untrustworthy, confusing, and of little or no probative value.

This is not a situation in which the problems with the recordings can be cured by giving the defendant the recordings sufficiently in advance of trial for him to have the opportunity to prepare his own transcript. *See Britton*, 68 F.3d at 264. Rather, here, the court has considerable doubt that any transcriber could make heads or tails of much of the recordings, so that any transcript would be the product of a great deal of speculation.

5

Moreover, it would be improper, in any event, to admit the recordings with a transcript, where the recordings are so poor that the jury would, inevitably, have to rely almost exclusively on the transcripts to get any sense out of the recordings. *See* FED. R. EVID. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."). Similarly, it is not sufficient to allow the defendant—or anyone else—the opportunity to argue to the jury his version of what was contained on the inaudible portions of the recordings, *see Nicholson*, 815 F.2d at 63 (it was not improper to admit recordings where the defendant was allowed to argue to the jury his version of what was contained on the inaudible portions), because the quality of the recordings is so poor that their contents can neither corroborate nor be corroborated by the testimony of the alleged participants; such testimony would simply substitute for the recordings, again in violation of Rule 1002.

Finally, in some cases in which the defendant challenged the audibility or quality of recordings, this court has left to the jury the question of what the recordings contained, using a jury instruction based primarily on the instructions approved in *United States v. Singleton*, 125 F.3d 1097, 1105-06 (7th Cir. 1997).[2] Such an instruction is not sufficient

---

[2]Such an instruction is in the following form:
> If you find that any portion of a recording is inaudible or partially inaudible, because of such things as actual gaps in the recording or other noise on the recording, or if you hear something different from what is indicated in the transcript in a portion of the recording that is inaudible or partially inaudible, then you must disregard the transcript to the extent that the transcript attempts to indicate what the persons on the recording said during the inaudible or partially audible portions. You may also consider whether inaudible or

(continued…)

6

Case 3:06-cr-03061-MWB   Document 34   Filed 01/31/07   Page 6 of 7

to cure the defects in the recordings here, however, where the inaudible or unintelligible portions of the recording are so extensive that jurors would, if they followed the instruction, have to disregard both the recording and any accompanying transcript in their entirety.

This copy of the recordings must be excluded.

THEREFORE, the defendant's January 17, 2007, First Motion In Limine (docket no. 29) is **granted** to the extent that the copy of the recordings in question first provided to the defendant and the copy subsequently provided to the defendant and the court with the government's response **are inadmissible**. The recordings *may* be admissible only if the government succeeds in producing a copy that is sufficiently "clean," or adequately "enhanced," that the conversations are substantially audible and intelligible and the court is satisfied as to the authenticity of the copy.

**IT IS SO ORDERED.**

**DATED** this 31st day of January, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[2](…continued)
        partially audible portions of the recording indicate that the recording has been altered or damaged, such that it is unreliable, in whole or in part.